**IT IS ORDERED as set forth below:**



Date: October 18, 2023

_____
**Wendy L. Hagenau
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | CASE NO. 22-53852-WLH |
| DOMINIQUE MAKEBA TANNER, | CHAPTER 7 |
| Debtor. | |
| NEIL C. GORDON, TRUSTEE, | ADVERSARY PROCEEDING NO. 23-5067-WLH |
| Plaintiff, | |
| v. | |
| CARLA LYNETTE HINES, AND THE GREATHOUSE GROUP LLC D/B/A GREATHOUSE TRIAL LAW, | |
| Defendants. | |

**ORDER ON DEFENDANT CARLA LYNETTE HINES' MOTION TO DISMISS**

**THIS MATTER** is before the Court on the Motion to Dismiss filed by Carla Lynette Hines ("Ms. Hines") (Doc. No. 8) (the "Motion"), Plaintiff's Response thereto (Doc. No. 11), and Ms. Hines' Reply in support of the Motion (Doc. No. 13). The Court has subject matter jurisdiction

1

over Plaintiff's claims pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157(a), and the matter is core under 28 U.S.C. §§ 157(b)(2)(E) & (b)(2)(O).

## I.    FACTS

The Complaint alleges the following facts, which are taken as true for purposes of a motion to dismiss. Official Comm. of Unsecured Creditors of Tousa, Inc. v. Technical Olympic, S.A. (In re Tousa), 437 B.R. 447, 452 (Bankr. S.D. Fla. 2010) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). Debtor was injured in a car accident on August 8, 2021. Debtor retained The Greathouse Group LLC d/b/a Greathouse Trial Law ("Greathouse") to represent her regarding a potential personal injury claim stemming from the accident (the "PI Claim"). Carla Lynette Hines ("Ms. Hines") is an attorney employed by Greathouse.

On January 6, 2022, Ms. Hines sent Debtor an email stating:

Good afternoon Ms. Tanner,

It was a pleasure speaking with you today. Per our tele-con, once we receive your medical records and billing from Emory, we'll be able to send everything to the at-fault driver's insurance company to begin settlement negotiations. Once they give their offer, I'll update you accordingly. In the meantime, please contact me or your case manager, Ms. Jenniese Ali in copy with any questions or concerns you may have as the case progresses. . . .

On May 19, 2022, Debtor emailed Ms. Hines and Ms. Ali, a paralegal or case manager at Greathouse, stating, "I wanted to follow up to see if you started the process with the insurance company. I have plans to file bankruptcy soon."

Debtor filed for Chapter 7 bankruptcy relief the next day on May 20, 2022. Neil C. Gordon was appointed as Chapter 7 Trustee (the "Trustee").

Meanwhile, on June 6, 2022, Hines made a demand on Debtor's insurer, Progressive Premier Insurance Company ("Progressive"), for $25,000 to settle the PI Claim.

On June 21, 2022, Debtor's bankruptcy counsel (Charles Clapp) informed the Trustee that

2

Debtor had been injured in a car accident and had retained counsel to represent her in connection with the PI Claim. The Trustee held and concluded the Debtor's meeting of creditors pursuant to section 341 of the Bankruptcy Code on June 27, 2022. That same day, Debtor forwarded an email from her bankruptcy counsel, Mr. Clapp, to Ms. Ali. The email said, "Please see below from my bankruptcy attorney." It included an email forwarded from Mr. Clapp that stated:

> Please forward this to your Personal Injury Attorney and ask him to give me a call. Basically, you cannot exempt an award based on pain and suffering. You can only exempt an award for "actual bodily injury," which is a fancy way of saying, you were hurt. And you were in this case, but when you (sic) attorney is settling it, we need some language about bodily injury to help our case.

The Trustee attempted to contact Ms. Hines regarding the PI Claim by telephone and email; Ms. Hines did not respond.

Defendants settled the PI Claim on November 11, 2022. The settlement consisted of $25,000 from Progressive and $2,500 from State Farm for underinsured motorist coverage for a total of $27,500 (the "Settlement Funds"). Pursuant to the settlement memo, funds were owed to medical providers in the amount of $11,820.90. Attorney's fees of $9,166.67 and expenses of $250.00 were paid to Defendants. The balance of $6,262.43 of the Settlement Funds was disbursed to Debtor. Defendants did not seek or obtain Court approval of the settlement of the PI Claim or of their compensation and expenses paid pursuant to the settlement memo.

On March 20, 2023, counsel for the Trustee sent Ms. Hines a letter requesting turnover of the Settlement Funds, with an accounting and additional damages of at least $5,000. The letter stated that if the funds were not received by March 31, 2023, the Trustee would proceed to file a lawsuit against Ms. Hines and Greathouse to recover the Settlement Funds, plus actual damages, including attorney fees and costs, and punitive damages. Defendants did not turnover the Settlement Funds as requested.

On May 19, 2023, the Trustee filed the Complaint. The Trustee amended the Complaint on July 5, 2023. The Complaint, as amended, makes claims for avoidance, recovery, and preservation of the post-petition transfers pursuant to sections 549, 550, and 551 of the Bankruptcy Code; damages for violating the automatic stay pursuant to sections 362(k) and 105; turnover of the Settlement Funds pursuant to section 542 of the Bankruptcy Code; conversion and money had and received, requiring return of the Settlement Funds; and punitive damages.

On July 19, 2023, Ms. Hines filed the Motion contending dismissal is appropriate for failure to state a claim upon which relief can be granted. Ms. Hines contends the PI Claim was settled and the Settlement Funds were disbursed without her actual knowledge of the bankruptcy case. The Trustee filed a response in opposition to the Motion (Doc. No. 11), and Ms. Hines filed a reply in further support of the Motion (Doc. No. 13). The Motion only addresses claims against Ms. Hines. Defendant Greathouse Group, LLC has not filed a motion to dismiss.

## II.   MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### a.  Motion to Dismiss for Failure to State a Claim

Ms. Hines seeks dismissal of the complaint pursuant to Federal Rule of Bankruptcy Procedure 12(b)(6), made applicable by Federal Rule of Bankruptcy Procedure 7012, for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 554, 570 (2007)). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

While the plausibility standard "asks for more than a sheer possibility that a defendant has

acted unlawfully," Iqbal, 556 U.S. at 678, the purpose of a motion to dismiss is not to resolve disputed facts or decide the merits of a case. Rather, the purpose of a motion to dismiss is to ensure that the plaintiff has provided notice of the grounds which entitle him to relief. Twombly, 550 U.S. at 561. The facts alleged must be taken as true, and dismissal is inappropriate merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits. Official Comm. of Unsecured Creditors of Tousa, Inc. v. Technical Olympic, S.A. (In re Tousa), 437 B.R. 447, 452 (Bankr. S.D. Fla. 2010) (citing Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)).

### b. Avoidance and recovery of post-petition transfer

#### i. Section 549

Section 549 permits the trustee to avoid a post-petition transfer of estate property if the transfer was made without court authorization and is not otherwise permitted by the Bankruptcy Code. Section 549 states, in pertinent part:

> (a) Except as provided in subsection (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
>    (1) that occurs after the commencement of the case; and
>       (A) that is authorized only under section 303(f) or 542(c) of [title 11]; or
>       (B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a). Section 549 is a strict liability statute which authorizes a trustee to recover unauthorized post-petition transfers from transferees. In re Goins, 627 B.R. 186, 191 (N.D. Ga. 2021), appeal dismissed, 2021 WL 3025609 (11th Cir. May 19, 2021). The section "implements an important federal purpose: to ensure that disbursements from bankruptcy estates be made only as permitted by federal bankruptcy law." In re Moon, 385 B.R. 541, 551 (Bankr. S.D.N.Y. 2008). Section 549 does not seek to augment the estate but, rather, to recover property that should never have left the estate. In re Belmonte, 551 B.R. 723, 726 (Bankr. E.D.N.Y. 2016). To prevail a

plaintiff must prove: (1) a post-petition transfer; (2) of estate property; (3) which was not authorized by the Bankruptcy Code or Court. Gordon v. McGhee Auto Sales, Inc. (In re Goins), 598 B.R. 497, 503 (Bankr. N.D. Ga. 2019).

A "transfer" is defined to include "each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with—(i) property; or (ii) an interest in property." 11 U.S.C. § 101(54)(D). Meoli v. Huntington Nat'l Bank, 848 F.3d 716, 728 n.6 (6th Cir. 2017) ("The Code defines a 'transfer' very broadly."); Gibson v. United States (In re Russell), 927 F.2d 413 (8th Cir. 1991) (The term "transfer" was intended be Congress to be "as broad as possible."). The payment of settlement proceeds, including a portion of funds to which an attorney had pre-petition contractual entitlement, constitutes a transfer. Moon, 385 B.R. at 550.

Section 541 broadly defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The case law is clear: a cause of action belonging to the debtor that has accrued prior to commencement of the bankruptcy case is property of the estate. In re Rosales, 621 B.R. 903, 918 (Bankr. D. Kan. 2020); In re Hettick, 413 B.R. 733, 752 (Bankr. D. Mont. 2009); Moon, 385 B.R. at 550 (a debtor's right to recover in a personal injury action are estate property). The accrued claim is property of the estate even if a lawsuit is not filed until after commencement of the case. See Porrett, 564 B.R. at 68. The post-petition settlement of a pre-petition claim also constitutes property of the estate under section 541(a)(6) as proceeds from the cause of action. Id. ("a post-petition payment on a pre-petition claim is 'proceeds' of the claim pursuant to § 541(a)(6), because the post-petition payment is 'traceable to' the original property, which was the pre-petition claim"); see also In re Cooper, 263 B.R. 835, 837 (Bankr. S.D. Ohio 2001) (prepetition personal injury claims, as well as the settlement proceeds from such claims are property of the bankruptcy estate).

6

Knowledge is generally not relevant under section 549. Section 549(c) provides that the trustee may not avoid transfers of an interest in realty to good faith purchasers for present fair equivalent value and without knowledge of the commencement of the case. In re William, 2018 WL 1444856, at *3 (Bankr. N.D. Ga. Mar. 22, 2018). The section relates only to realty, though, not to causes of action.

Plaintiff has alleged, and the docket in the bankruptcy case reflects the settlement agreement was never approved by the Court, and distributions under it were not authorized, and no funds were ever turned over to the Trustee. Defendant contends she did not engage in any knowingly wrongful, unethical, or otherwise sanctionable conduct, but such conduct is not required under section 549. Section 549 is a strict liability statute. Plaintiff has alleged there was (1) a transfer after the commencement of the case, (2) of estate property, (3) that was not authorized. Plaintiff has adequately pled each element of a cause of action under section 549 and, accordingly, the Motion is denied as to this claim.

### ii. Section 550

Once the trustee has established that a transfer is avoidable, section 550 provides for liability for the avoided transfer. After avoiding a transfer pursuant to section 549, the property or value of the property can be recovered from an initial transferee pursuant to section 550(a)(1). In re William, 2018 WL 1444856, at *4 (Bankr. N.D. Ga. Mar. 22, 2018). A party must first prove that a transfer is avoidable. Desmond v. Am. Express Centurion Bank, Inc. (In re Callas), 557 B.R. 647, 653 (Bankr. N.D. Ill. 2016); Gordon v. Harman (In re Harman), 508 B.R. 780, 788 (Bankr. N.D. Ga. 2014). Next, a party must prove that the transferee is an initial, immediate, or mediate transferee that can exercise legal control over the asset received and is not merely a conduit. Martinez v. Hutton (In re Harwell), 628 F.3d 1312, 1321 (11th Cir. 2010) (citing Andreini & Co.

7

v. Pony Express Delivery Services, Inc. (In re Pony Express Delivery Services, Inc.), 440 F.3d 1296 (11th Cir. 2006)). The trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property from the initial transferee or a subsequent transferee. 11 U.S.C. §§ 550(a), (b).

As set forth above, Plaintiff has stated a plausible claim for relief the transfer of the Settlement Funds is avoidable pursuant to section 549. Further, the Trustee has alleged Ms. Hines received the Settlement Funds as the initial transferee and she was therefore able to exercise legal control over them. Accordingly, Plaintiff has alleged sufficient facts to state a plausible claim for relief against Ms. Hines pursuant to section 550(a)(1).

### iii. Section 551

Finally, pursuant to section 551, any property or value recovered pursuant to section 549 is automatically preserved for the benefit of the estate, as to property of the estate. 11 U.S.C. § 549. Therefore, after stating a claim under section 549, a party only needs to prove the extent of what is property of the estate. In re William, 2018 WL 1444856, at *4 (Bankr. N.D. Ga. Mar. 22, 2018). Pursuant to section 541 of the Bankruptcy Code, all the interests that Debtor possessed at the time she filed for bankruptcy became property of the estate. The Trustee has alleged the PI Claim, and any proceeds derived therefrom including the Settlement Funds, constitutes property of the estate. Accordingly, Plaintiff has alleged sufficient facts to state a plausible claim for relief pursuant to section 551.

### c. Automatic Stay

Plaintiff contends Ms. Hines's pursuit of the PI Claim and collection and disbursement of the Settlement Funds were willful violations of the automatic stay imposed by section 362 of the Bankruptcy Code. Trustee alleges Ms. Hines exercised control over property of the estate by

8

settling the PI Claim without the Court's and the Trustee's approval. The Trustee alleges the violation was willful because 1) Debtor informed Ms. Hines by email she was contemplating bankruptcy and she did in fact file bankruptcy the next day, and 2) Ms. Hines had actual notice of Debtor's bankruptcy case by virtue of an email sent to Ms. Ali on June 27, 2022, and by follow up phone and email communications to Ms. Hines. Ms. Hines contends she did not willfully violate the automatic stay because she did not have actual notice of the bankruptcy case. She contends 1) knowledge Debtor contemplated filing bankruptcy is not sufficient, and 2) Ms. Ali was not her agent and, therefore, notice to Ms. Ali cannot be imputed to her.

The commencement of a bankruptcy case operates to stay "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 363(a)(3). "One of the principal purposes of the automatic stay is to preserve the property of the debtor's estate for the benefit of all the creditors." In re Prudential Lines Inc., 928 F.2d 565, 573 (2d Cir. 1991); In re Stinson, 221 B.R. 726, 730 (Bankr. E.D. Mich. 1998) (explaining the stay serves dual purposes: 1) protecting the debtor from the collection activities of creditors and 2) protecting the court's processes in marshaling and distributing estate assets). The specific purpose of § 362(a)(3) is "to prevent dismemberment of the estate." Stinson, 221 B.R. at 730 (citing 1 David G. Epstein et al., *Bankruptcy* § 3–14, at 162 (1992)). As one treatise explains: "Liquidation must proceed in an orderly fashion. Any distribution of property must be by the trustee after he has had an opportunity to familiarize himself with the various rights and interests involved and with the property available for distribution." Id. To achieve this purpose,

> Section 362(a)(3) stays all actions, whether judicial or private, that seek to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. The trustee or debtor in possession takes control of all property of the estate in order to maintain any going concern value and to assure an equitable distribution of the property among creditors. This requires that

9

> no entity seek to interfere with these tasks by taking possession of or exercising control over property of the estate.

3 Collier on Bankruptcy ¶ 362.03[5] (16th ed. 2023) (footnotes omitted). Thus, the "stay applies to attempts to obtain control over both tangible and intangible property. . . . It also protects causes of action that are vested in the trustee." Id. Attorneys are simply not free to continue to take actions involving claims which belong to the bankruptcy estate without court approval. In re Cooper, 263 B.R. 835, 837–38 (Bankr. S.D. Ohio 2001).

A debtor's personal injury action itself is not stayed, because section 362(a)(1) stays only judicial actions *against* a debtor. Stinson, 221 B.R. at 730-31 (emphasis in original). But the debtor's exercise of control over the estate property is stayed by section 362(a)(3). Id. In Stinson, 221 B.R. 726, for example, the court found that by settling the debtor's pre-petition personal injury claim without the bankruptcy court's or the trustee's approval, counsel interfered with the bankruptcy court's exclusive jurisdiction over property of the estate and violated the automatic stay by exercising control over the property for purposes of section 362(a)(3). Id. at 729–32.

If the automatic stay is violated, the Bankruptcy Code establishes a mechanism both to provide compensation for the offense and to punish the offender. Section 362(k) of the Bankruptcy Code provides as follows:

> Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

11 U.S.C. § 362(k)(1). A violation of the automatic stay is "willful" if the party (1) knew the automatic stay was invoked and (2) intended the actions which violated the stay. The fact that the party did not intend to violate the automatic stay and acted without malice does not preclude a finding of contempt and an assessment of appropriate sanctions. Id. A willful violation does not require a specific subjective intent to violate the stay. Rather, a willful violation may be found if

10

the creditor knew of the automatic stay and its actions were intentional. When a creditor has actual knowledge that a debtor has filed a bankruptcy petition, the creditor has an affirmative duty to terminate or undo any action which violates the automatic stay.[1]

The statute is silent on what notice is required, but in finding "willful" conduct sufficient for section 362(k) violations, courts have routinely found that knowledge can be imputed to the creditor through informal means, even by a mere telephone call. Green Tree Servicing, LLC v. Taylor, 369 B.R. 282, 287 (S.D.W. Va. 2007); see e.g. In re Flack, 239 B.R. 155, 163 (Bankr. S.D. Ohio 1999) (internal citation omitted) ("knowledge does not have to come through formal means, and even if not scheduled, a willful violation may be established where the creditor has sufficient facts to cause, '. . . a reasonably prudent person to make further inquiry.'"); In re Clayton, 235 B.R. 801, 808 (Bankr. M.D.N.C. 1998) ("knowledge of the existence of an active bankruptcy case need not be communicated through formal notification of the filing of a petition").

In order to sanction a party for violating the automatic stay under section 105(a), the Court must find clear and convincing evidence that the party had knowledge of the bankruptcy filing and carried out the acts that constitute the violation with general intent. In re Morgenstern, 542 B.R. 650, 659 (Bankr. D.N.H. 2015), aff'd sub nom. White v. Gordon, 558 B.R. 15 (D.N.H. 2016). The test for knowledge is generally the same under section 105(a) as it is under section 362(k). See In

---

[1] The Trustee's ability to seek sanctions or damages for a stay violation under section 362(k) may not be entirely clear. In re First Leads & Mktg., Inc., 2023 WL 4163478, at *8 (Bankr. N.D. Ga. June 23, 2023) (citing In re McKeever, 550 B.R. 623, 643 (Bankr. N.D. Ga. 2016)). Several courts in the Northern District of Georgia have found a trustee is not an individual entitled to recover damages under section 362(k). McKeever, 550 B.R. at 642 (citing cases). Some other courts have concluded that, even if the trustee is not an individual for purposes of section 362(k), the trustee may be entitled to recover for a violation of the automatic stay under section 105 as a sanction for civil contempt. See, e.g., In re Dyer, 322 F.3d 1178, 1189 (9th Cir. 2003); In re Newgent Golf, Inc., 402 B.R. 424, 434 (Bankr. M.D. Fla. 2009) (citing cases); In re M.T.G., Inc., 646 B.R. 1, 174–75 (Bankr. E.D. Mich. 2022); In re Morgenstern, 542 B.R. 650, 659 (Bankr. D.N.H. 2015), aff'd sub nom. White v. Gordon, 558 B.R. 15 (D.N.H. 2016). Here, no one has questioned the Trustee's ability to seek damages for a stay violation, and the Complaint as amended also asserts a claim under section 105, which permits the bankruptcy court to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. Accordingly, the Court will consider whether the Complaint plausibly states a claim for relief regarding the automatic stay.

re Pratt, 462 F.3d 14, 21 (1st Cir. 2006); see also Morgenstern, 542 B.R. at 659 (finding creditor court was unquestionably aware of bankruptcy case despite claiming to have not received formal notice of the filing). The Court must also find that the statutory provisions defining the scope of the automatic stay are "clear and unambiguous as to whether the conduct in question is prohibited." Id. (citing In re Sayeh, 445 B.R. 19, 28 (Bankr. D. Mass. 2011)). Neither specific intent to violate the automatic stay nor bad faith is required. Sayeh, 445 B.R. at 28.

Trustee contends the May 19, 2022, email from Debtor to Ms. Hines put Ms. Hines on notice of the continuing need to check PACER and take other actions to determine whether Debtor had filed bankruptcy. Pre-filing contact may be considered in determining whether an entity had knowledge of a bankruptcy filing. For example, in Green Tree Servicing, LLC v. Taylor, 369 B.R. 282 (S.D.W. Va. 2007), the debtor faxed a letter to the creditor's counsel accurately stating a bankruptcy petition would be filed later that day. Id. at 287-88. The court noted that the communication was sufficient to cause a reasonable person to at least inquire about the status of the bankruptcy prior to taking action. As the court explained in In re Fisher, 2019 WL 1875366 (Bankr. S.D. Ala. Mar. 27, 2019), "[i]t takes only a few moments to check a client's name on PACER before distributing settlement proceeds to determine whether that client is in bankruptcy. . . . if a lawyer fails to check PACER to confirm that a client is not in bankruptcy immediately before distributing settlement proceeds, the lawyer runs the risk of being held liable[.]" Id. at *2. Other courts have found, while a prudent attorney should confirm a client is not in bankruptcy before taking action, a mere reference to possibly filing bankruptcy does not equate to notice. In In re Thomas, 2013 WL 3353884, at *1 (Bankr. M.D. Pa. July 3, 2013), the debtor exchanged text messages with a creditor but did not explicitly state he had filed a bankruptcy petition. The court found the creditor's knowledge that the debtor was contemplating bankruptcy and was consulting

12

with a bankruptcy attorney was not sufficient to conclude the creditor had actual knowledge of the bankruptcy filing. Id. at *1; see also In re Bosse, 122 B.R. 410, 412 (Bankr. C.D. Cal.1990) (telephone conversation where debtor advised creditor that he intended to file bankruptcy not sufficient to bar nondischargeability complaint).

The alleged facts, taken as true, provide sufficient content to infer a reasonable person in receipt of the May 19, 2022 email would have at least inquired about the status of the bankruptcy prior to settling the PI Claim and distributing the Settlement Funds.

Next, the Trustee alleges Ms. Hines had actual notice of the Debtor's bankruptcy case no later than June 27, 2022, when Debtor sent an email to Ms. Ali. The Trustee has alleged Ms. Ali was a paralegal or case manager working on the PI Claim under the supervision of Ms. Hines and as an employee of Greathouse, such that receipt of the June 27, 2022 email is imputed to Ms. Hines. Further, in this case Ms. Hines had previously instructed Debtor to contact Ms. Ali regarding the PI claim. On January 6, 2022, she sent an email instructing Debtor to "contact me or your case manager, Ms. Jenniese Ali in copy with any question or concerns you may have as the case progresses." Nevertheless, Ms. Hines contends no agency relationship existed between her and Ms. Ali.

For purposes of a willful violation of the bankruptcy stay, knowledge of the agent is imputed to the principal. See, e.g., Gordon v. Taylor (In re Taylor), 430 B.R. 305, 314 (Bankr. N.D. Ga. 2010); accord Stancil v. Bradley Invs., LLC (In re Stancil), 2013 Bankr. LEXIS 182, at *10-11 (Bankr. D.D.C. Jan. 16, 2013) ("The knowledge element of a § 362(k) claim for willful violation of the automatic stay can be based on an agent's knowledge, imputed to his principal by virtue of the agency relationship."). Courts have imputed the knowledge of an individual employee to the company as a whole. In re Holyfield, No. 16-67309, 2019 WL 2387045, at *5 (Bankr. N.D.

Ga. June 3, 2019). Generally, the acts of a paralegal working on behalf of a lawyer who is representing a client will be imputed to the affiliated attorney. In re McGinty, 119 B.R. 290, 297 (Bankr. M.D. Fla. 1990) (paralegal and attorney both liable for violation of stay); In re Poole, 242 B.R. 104 (Bankr. N.D. Ga. 1999) (actual notice of bankruptcy could be imputed to law firm under agency principles). For example, in In re Clayton, 235 B.R. 801 (Bankr. M.D.N.C. 1998), a paralegal called the case trustee and bankruptcy court to determine whether the debtor had a pending case. The court imputed the paralegal's constructive notice of the debtor's case to the attorney and law firm by virtue of their status as the principals. Id. at 810 (citing Mallis v. Bankers Trust Co., 717 F.2d 683, 689 n. 1 (2d Cir.1983) ("It is a basic tenet of the law of agency that the knowledge of an agent, or for that matter a partner or joint venturer, is imputed to the principal.")).

Accepting as true the facts alleged, the complaint pleads sufficient factual content for the Court to draw the reasonable inference that the June 27, 2022 email provided Ms. Hines with actual notice of Debtor's bankruptcy case. The Trustee has alleged Ms. Hines knew the automatic stay was invoked and intended to settle the PI Claim and distribute the Settlement Funds, in violation of the clear and unambiguous language of the Bankruptcy Code, to plausibly state a claim for a willful violation of the automatic stay under both sections 362(k) and 105(a). Accordingly, the Motion is denied as to this claim.

### d. Turnover

Plaintiff contends that, during the Bankruptcy Case, Ms. Hines had possession and control of the Settlement Funds, which constitute property of the estate, and she should be required to account and turnover the Settlement Funds to the Trustee pursuant to section 542 of the Bankruptcy Code.

Under the Bankruptcy Code, the trustee has the exclusive authority to administer and

14

dispose of property within the bankruptcy estate. 11 U.S.C. §§ 704(a)(1); 541(a)(1). In re Harber, 553 B.R. 522, 527 (Bankr. W.D. Pa. 2016). Section 542 provides an entity "in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 . . . shall deliver to the trustee, and account for, such property or the value of such property[.]" 11 U.S.C. § 542(a). Courts have held that this section states the general rule that "any property of a debtor's estate held by any entity must be turned over to the trustee. . . ." In re NWFX, Inc., 864 F.2d 593, 596 (8th Cir.1989). "There is no requirement in the Code that the trustee make demand, obtain a court order, or take any further action in order to obtain a turnover of the estate's property." In re Larimer, 27 B.R. 514, 516 (Bankr. D. Idaho 1983); In re U.S.A. Diversified Prod., Inc., 196 B.R. 801, 805 (N.D. Ind.), aff'd sub nom. Matter of USA Diversified Prod., Inc., 100 F.3d 53 (7th Cir. 1996). The purpose of section 542(a) is to "empower the trustee in bankruptcy to get hold of the property of the debtor, some of which will be in the possession, custody, or control of third parties." In re Smith, 637 B.R. 758, 777 (Bankr. S.D. Ga. 2022). The trustee must establish the following elements: "(1) the property sought to be turned over is property of the estate; (2) the party against whom turnover is sought is an 'entity;' (3) the entity was in possession, custody, or control of the property during the case; and (4) the trustee may use or sell the property." Id.

First, as discussed above, "property of the estate" includes causes of action "if the claim existed at the commencement of the filing and the debtor could have asserted the claim on his own behalf under state law." In re Harber, 553 B.R. 522, 527 (Bankr. W.D. Pa. 2016). Even if an attorney has some type of lien on settlement proceeds, "[t]he existence of a lien against property does not exclude the property from the estate; the debtor has an interest in property and the property becomes property of the estate, subject to the lien." In re Roberts, 556 B.R. 266, 280 (Bankr. S.D. Miss. 2016) (citing Havis v. Norman (In re Equator Corp.), 362 B.R. 326, 332 (Bankr. S.D. Tex.

15

2007)).

Second, the party against whom turnover is sought must be an entity. Entity is defined in § 101(15) to include a "person." 11 U.S.C. § 101(15). Person, in turn, includes "individual, partnership, and corporation." 11 U.S.C. § 101(41).

Third, the trustee must establish the entity was in possession, custody, or control of the property during the case. Section 542(a) requires the delivery of property of the estate *or the value thereof*. Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A. (In re USA Diversified Products, Inc.), 100 F.3d 53, 56 (7th Cir.1996) (emphasis added). An attorney, therefore, must deliver up the property he possessed post-petition or the value thereof, even if he no longer possesses it at the time of the turnover action. In re Cooper, 263 B.R. 835, 838 (Bankr. S.D. Ohio 2001). To hold otherwise would mean that a possessor of property of the estate, upon receiving a demand for turnover, could thwart the demand simply by transferring the property to somebody else. Id. Moreover, section 542(a) requires an entity to "account for" the property or the value thereof to be returned to the estate to ensure that the estate receives everything to which it is entitled under section 541. This is true whether or not the property is in the entity's possession at the time of the turnover complaint. In re McKeever, 567 B.R. 652, 664 (Bankr. N.D. Ga. 2017) (citing Taub v. Taub (In re Taub), 427 B.R. 208, 222 (Bankr. E.D.N.Y. 2010)).

Finally, the trustee must establish his authority to use or sell the property. Section 363(b) of the Bankruptcy Code provides that the trustee has the authority to use, sell, or lease property of the estate. 11 U.S.C. § 363(b). The trustee has sole authority to settle a cause of action that belongs to the bankruptcy estate. In re Porrett, 564 B.R. 57, 72 (D. Idaho 2016); see also Estate of Spirtos v. Superior Court, 443 F.3d 1172, 1176 (9th Cir. 2006) ("[T]he bankruptcy code endows the bankruptcy trustee with the exclusive right to sue on behalf of the estate."); Canatella v. Towers

16

(In re Alcala), 918 F.2d 99, 102 (9th Cir. 1990) (causes of action that accrued before the Chapter 7 petition was filed are part of the bankruptcy estate vested in the trustee). Accordingly, a Chapter 7 trustee has the authority under section 363 to use funds from settlement of a cause of action. In re Roberts, 556 B.R. 266, 282–83, 284 (Bankr. S.D. Miss. 2016); see also Smith, 637 B.R. at 777 (finding the fourth element was "undeniably met" because section 542(a) "is the means by which a trustee collects property of the estate and administers the estate by paying unsecured creditors and claims.").

The Trustee has alleged the non-exempt proceeds of the Settlement Funds were property of the estate. Second, the Trustee has alleged Ms. Hines is an entity as defined in section 101(15). Third, Plaintiff has alleged Ms. Hines was in possession, custody, or control of the Settlement Funds during the case. Fourth, the Trustee has alleged he has authority to use the Settlement Funds pursuant to section 363(b). Accepting as true the facts alleged, the Complaint pleads sufficient factual content to state a plausible claim for turnover.

    e. **Conversion**

Next, the Trustee contends Ms. Hines willfully and unlawfully took and converted the Settlement Funds.

In Georgia, conversion is defined as "an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation[.]" Levenson v. Word, 294 Ga. App. 104, 106 (2008), aff'd, 286 Ga. 114 (2009) (citation omitted); see also O.C.G.A. § 51-10-1 ("The owner of personalty is entitled to its possession. Any deprivation of such possession is a tort for which an action lies."). In Georgia, the elements of conversion are: (1) the plaintiff had title or right of possession to property; (2) there

17

was actual possession in the other party and (3) the party exercised wrongful dominion and control; (4) there was a demand for return of property; (5) the defendant refused to return the property. Peach State Bank & Tr. v. Wells Fargo Bank Nat'l Ass'n (Inc.), 2019 WL 13224780, at *4 (N.D. Ga. June 20, 2019) (citing Trey Inman & Associates, P.C. v. Bank of America, N.A., 306 Ga. App. 45 (2010)). A failure to turnover settlement funds belonging to a bankruptcy estate can constitute conversion. See In re McLemore, No. 20-32131-WRS, 2022 WL 362915, at *5 (Bankr. M.D. Ala. Feb. 7, 2022), vacated and remanded on other grounds, 2023 WL 401332 (M.D. Ala. Jan. 25, 2023).

The Trustee has alleged he had a right of possession to the Settlement Funds, Ms. Hines had actual possession of the Settlement Funds, Ms. Hines exercised ownership over the Settlement Funds in hostility to the Trustee's rights by disbursing them and not turning them over to the Trustee, the Trustee made a request for Ms. Hines to return the Settlement Funds, and Ms. Hines refused to return the Settlement Funds. The Trustee has alleged sufficient facts to state a plausible claim for relief as to conversion. Accordingly, Defendant's Motion is denied as to this claim.

f. **Money Had and Received**

Under the common law doctrine of money had and received, recovery is authorized against one who holds unspecified sums of money of another which he ought in equity and good conscience to refund. Taylor v. Powertel, Inc., 250 Ga. App. 356, 359 (2001). The elements of such action are: a person has received money of the other that in equity and good conscious he should not be permitted to keep; demand for repayment has been made; and the demand was refused. Id. In order to sustain an action for money had and received, a party must show, in addition to showing that an entity has received money justly belonging to another, that it made a demand for payment and was refused. City of Atlanta v. Hotels.com, 289 Ga. 323, 328 (2011).

18

The Trustee has alleged he made a demand for payment of the Settlement Funds and that such a demand was refused. The Complaint states a plausible claim for money had and received.

### g. Punitive Damages

Punitive damages may be awarded in an intentional tort action. O.C.G.A. § 51-12-5.1. Punitive damages are recoverable where conversion can be proven. Taylor v. Powertel, Inc., 250 Ga. App. 356, 356–57 (2001). For punitive damages to be recoverable as damages, there must exist some evidence of culpable tortious conduct, and such culpable conduct must be of such nature to justify the imposition of punitive damages to penalize, punish, or deter such conduct. Unified Svcs. v. Home Ins. Co., 218 Ga. App. 85, 87–89 (1995). The culpable conduct must be more than negligence, even gross negligence. Coker v. Culter, 208 Ga. App. 651, 652 (1993).

Conversion is an intentional tort and, as such, comes within O.C.G.A. § 51–12–5.1(b). See Grant v. Newsome, 201 Ga. App. 710 (1991). The Trustee has alleged sufficient facts to state a plausible claim for relief as to conversion which if proven, could support a claim for punitive damages. Accordingly, the Motion is denied as to this claim.

### III. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the Motion is **DENIED**.

**END OF DOCUMENT**

**Distribution List**

Donald P. Boyle
Taylor English Duma LLP
Suite 200
1600 Parkwood Circle
Atlanta, GA 30339

Neil C. Gordon
Taylor English Duma LLP
Suite 200
1600 Parkwood Circle SE
Atlanta, GA 30339

Carla Lynnette Hines
Greathouse Trial Law
260 Peachtree Street, NW
Suite 803
Atlanta, GA 30303

The Greathouse Group LLC
c/o Riah Winston Greathouse, Reg. Agnt.
260 Peachtree Street, NW
Suite 803
Atlanta, GA 30303

Keith Kodosky
Lewis Brisbois Bisgaard & Smith
600 Peachtree Street NE, Suite 4700
Atlanta, GA 30308

Olivia Ryan Mooney
Lewis Brisbois
600 Peachtree St, Ste 4700
Atlanta, GA 30308